UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
CENTURY SURETY COMPANY,

                Plaintiff,

      - against -

FRANCHISE CONTRACTORS, LLC,
3795 PROPERTIES, LLC,
WESTCHESTER FACILITIES GROUP, LLC,
PEARL DRYWALL FINISHING, INC.,
and CLYDE RICHARDSON,

                Defendants.
-------------------------------------X

**MEMORANDUM AND ORDER**

14 Civ. 277 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I.    <u>INTRODUCTION</u>

This is an insurance coverage dispute regarding the obligation, if any, of Plaintiff Century Surety Company ("Century") to defend and indemnify certain parties to a personal injury action pending in New York State Supreme Court. In the underlying state court action, Clyde Richardson ("Richardson") has sued Franchise Contractors, LLC ("Franchise"), 3795 Properties, LLC ("3795"), and Westchester Facilities Group LLC ("WFG"), seeking damages for an injury he suffered in the course of his work on a construction project.

Presently before the Court are four motions for summary judgment. Century seeks a declaration that it is not obligated to

defend or indemnify Franchise, 3795, or WFG in connection with the state court action.   Conversely, Franchise, 3795, and WFG each cross-move for a declaration that Century is so obligated.   For the following reasons, Century's motion for summary judgment is granted, and the cross-motions of Franchise, 3795, and WFG are denied.

## II.   BACKGROUND[1]

In 2011, defendant 3795 owned land located at 3795 Crompond Road in Yorktown Heights, New York, which it leased to defendant WFG.   See Ritzert Aff. Ex. L, at 1.   WFG hired Franchise to act as general contractor in the construction of a cancer treatment facility at that address.[2]   Franchise 56.1 ¶ 41; see Post Aff. Ex. F.   As general contractor, Franchise subcontracted with Pearl Drywall Finishing, Inc. ("Pearl") to perform interior sheetrock

---

[1]    Factual background is drawn from the following sources: (1) four statements of facts submitted pursuant to the Court's Local Rule 56.1, one by each moving party ("Century 56.1" (ECF No. 55), "Franchise 56.1" (ECF No. 70), "3795 56.1" (ECF No. 88), and "WFG 56.1" (ECF No. 82)); (2) four attorney affidavits, one in support of each moving party's motion for summary judgment, and the exhibits cited therein (Century's "Kohane Aff." (ECF No. 50), Franchise's "Post Aff." (ECF No. 67), 3795's "Ritzert Aff." (ECF No. 87), and WFG's "Souto Decl." (ECF No. 81)).   Elsewhere in this Memorandum and Order, we refer to the parties' legal memoranda submitted in support of their motions for summary judgment as their "Mem." or "Reply" as appropriate.

[2]    At oral argument, defendants' counsel stated that 3795 and Franchise, though separate companies, are owned by the same two principals: Frank Lombardi, Jr. and John Fiorino.   See also Souto Decl. Ex. I Dep. Tr. ("Fiorino Tr.") 8:8-12 (stating that these two individuals are the "managers" of both Franchise and 3795).

installation and taping work in the construction.  Franchise 56.1 ¶ 14.

Century issued to Franchise a commercial lines insurance policy numbered CCP 705087 (the "Century Policy"), covering the period from April 25, 2011 through April 25, 2012.  Id. ¶ 33; see Post Aff. Ex. I (the Century Policy).  Among other terms, the policy contained an endorsement modifying the policy to add an express limitation concerning injuries to independent contractors. Post Aff. Ex. I.  The endorsement, numbered CGL 1710 0311 and entitled "Exclusion – Bodily Injury to Independent Contractors," (the "Independent Contractor Exclusion") provided in relevant part as follows:

> This insurance does not apply to:
>
> **Independent Contractor**
>
> "Bodily injury" to:
>
> (1) Any independent contractor or the "employee" of any independent contractor while such independent contractor or their "employee" is working on behalf of any insured . . . .

Id.  The parties agree the Century Policy was in full force and effect in November of 2011.  See Century 56.1 ¶ 33; Franchise 56.1 ¶ 33.

On November 15, 2011, Richardson was employed by the subcontractor Pearl as a drywall taper on the construction project. Franchise 56.1 ¶ 15.  He claims that on that day, in the course

his work, he fell from a "bakers rack" scaffold and sustained personal injuries. Franchise 56.1 ¶ 52; see Post Aff. Ex. H. Thereafter, on December 15, 2011, Richardson commenced the state court action in New York Supreme Court, Bronx County, against Franchise and 3795.[3] See Richardson v. Franchise Contractors, LLC, No. 311440/2011 (N.Y. Sup. Ct. 2011). Richardson's complaint alleged negligent supervision of the construction project and violations of New York State labor law. See Post Aff. Ex. H.

The defendants in the state case sought coverage from Century under the Century Policy. First, Franchise notified its insurance agent about the accident, who in turn submitted a claim to Century on December 16, 2011. Franchise 56.1 ¶ 25; see Post Aff. Ex. K. Over the next year, Century disclaimed coverage in four letters to Franchise dated January 17, January 31, March 1, and October 16, 2012, citing, inter alia, the Independent Contractor Exclusion. See Post Aff. Ex. K. Later, claims were made on behalf of WFG and 3795 by Continental Casualty Company ("CNA") and Tudor Insurance Company ("Tudor"), two insurance companies that had issued commercial general liability policies to WFG and 3795, respectively. CNA and Tudor sought a defense and indemnity for their respective insureds in the state court action on the basis that WFG and 3795 were "additional insureds" under the Century

---

[3]     Initially, the state court action named only Franchise and 3795 as defendants. Post Aff. Exh. H. It appears, however, that Richardson later amended his complaint to add WFG as a defendant. See Kohane Aff. Ex. M.

Policy and therefore entitled to coverage under that policy.  CNA's tender letter to Century on behalf of WFG was dated May 23, 2013. Souto Decl. Ex. Q.  Century disclaimed coverage of CNA's claim by reply letter dated May 30, 2013.  Souto Decl. Ex. R.  Tudor's tender letter to Century on behalf of 3795 was dated July 1, 2013. Ritzert Aff. Ex. S.  Century disclaimed coverage of Tudor's claim by reply letter dated July 11, 2013.  Kohane Aff. Ex. T.

In early 2012, Century arranged for the law firm of Weiner, Millo, Morgan & Bananno to defend Franchise in the state court action, but it reserved its right to recover legal fees incurred in the defense if coverage was excluded by one of the policy's exclusions.  Kohane Aff. Ex. P, at 9.

In January of 2014, Century commenced this lawsuit against all five parties to the state court action: Franchise, 3795, WFG, Richardson, and Pearl.  Richardson and Pearl have since defaulted. See ECF Nos. 11, 14.  The remaining parties -- plaintiff Century and defendants Franchise, 3795, and WFG -- each move for summary judgment.  Century's principal argument is that coverage was excluded because Pearl was an independent contractor; therefore, the bodily injury suffered by Richardson, an employee of Pearl, falls squarely within the Independent Contractor Exclusion. Franchise, 3795, and WFG argue that Richardson's injury is covered under the Century Policy, both because the Independent Contractor Exclusion is ambiguous and because Pearl was not an independent

contractor.   3795 and WFG also claim that they are additional insureds entitled to coverage under the Century Policy.[4]   Finally, 3795 argues that Century did not give timely notice of disclaimer, as required by New York insurance law, and therefore waived its opportunity to disclaim coverage.

The Court concludes that the Independent Contract Exclusion is not ambiguous, that Pearl was an independent contractor, and that Century's notice of disclaimer was timely.

## III. <u>DISCUSSION</u>

### A.   Governing Law

#### 1.   Declaratory Judgment

In seeking certain declarations from the Court, the parties are presumably invoking the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, an "enabling Act" giving courts discretion to entertain actions such as this one seeking declaratory judgment. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 278 (1995).  A district court should render a declaratory judgment when such a judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty,

---

[4]     Because the Court concludes that Pearl was an independent contractor, the state court action arising out of Richardson's injury is not covered by the Century Policy regardless of whether 3795 and WFG are additional insureds under that policy.  Therefore, the Court does not reach the issue.  For the same reason, we do not address Century's secondary argument that its liability under the Century Policy, if any, is limited to the excess of what is covered under the policies issued by CNA and Tudor.

insecurity, and controversy giving rise to the proceeding." Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969).

"[W]here another suit involving same parties and presenting opportunity for ventilation of the same state law issues is pending in the state court, a district court might be indulging in a gratuitous interference if it permitted the federal declaratory action to proceed." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997) (brackets and internal quotation marks omitted).   Because the dispute over Century's insurance coverage obligations is distinct from the merits of the underlying state action and involves a different party, a declaratory judgment in this case is appropriate.

      **2.   Summary Judgment**

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).   The Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   Thus, in ruling on a summary judgment motion, "the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether

there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Crop., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  To show a genuine issue of fact for trial, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1).  Mere "conclusory allegations or denials" are insufficient to defeat the motion.  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (citing R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984)).  Finally, when multiple parties cross-move for summary judgment, as in this case, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

### 3.   Insurers' Duties to Defend and Indemnify

The parties presume that New York insurance law governs this action.  Because "implied consent to use a forum's law is sufficient to establish choice of law," we apply New York insurance law here.  Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989); see Bennett v. Sterling Planet, Inc., 546 F. App'x 30, 33 (2d Cir. 2013) ("In a diversity case, where the parties have agreed to the application of the forum law -- as evidenced by reliance on that

law in the parties' briefing, as in this case -- their agreement ends the choice-of-law inquiry.").

In New York, insurers have a broad obligation to defend actions against the insured and must provide a defense even to meritless claims. See Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 850 N.E.2d 1152 (2006); Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995) (applying New York law) ("[W]here the policy includes an obligation to defend, if there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability."). To avoid its duty to defend, the insurer faces a "heavy burden." Cont'l Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 654, 609 N.E.2d 506 (1993). Specifically, the insurer must show that the underlying allegations fall "solely and entirely" within "specific and unambiguous exclusions from policy's coverage." Avondale Indus., Inc. v. Travelers Indem. Co., 887 F.2d 1200, 1205 (2d Cir. 1989) (applying New York law); see Int'l Paper Co. v. Cont'l Cas. Co., 35 N.Y.2d 322, 325, 320 N.E.2d 619 (1974).

In contrast to the duty to defend, an insurer's duty to indemnify is narrower and triggered by a determination that the "loss, as established by the fact, is covered by the policy." Atl. Mut. Ins. Co. v. Terk Techs. Corp., 309 A.D.2d 22, 28, 763 N.Y.S.2d

56 (1st Dep't 2003); see Atl. Cas. Ins. Co. v. W. Park Assocs., Inc., 585 F. Supp. 2d 323, 325 (E.D.N.Y. 2008) (applying New York law).

    **4.   Construing Insurance Policies and Their Exclusions**

    Under New York law, the initial interpretation of a contract is determined by the court as a matter of law.  Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998).  In construing the provisions of a contract, including an insurance policy, "unambiguous terms" are given their "plain and ordinary meaning."  Teichman v. Cmty. Hosp. of W. Suffolk, 87 N.Y.2d 514, 520, 663 N.E.2d 628, 630 (1996); see Park Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) ("When the provisions are unambiguous and understandable, courts are to enforce them as written").  An ambiguity exists if the terms of an insurance contract "suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)).  When there is an ambiguity, the court must construe the meaning of any ambiguous term in favor of the insured party.  Breed

v. Ins. Co. of N. Am., 46 N.Y.2d 351, 357, 385 N.E.2d 1280 (1978).
However, that the litigating parties urge differing
interpretations does not itself create ambiguity. Metro. Life
Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990).

The same principles apply to the evaluation of asserted
exclusions of coverage. "To negate coverage by virtue of
exclusion, an insurer must establish that the exclusion is stated
in clear and unmistakable language, is subject to no other
reasonable interpretation, and applies in the particular case."
Cont'l Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 652, 609 N.E.2d
506 (1993). Initially, the "insurer bears the burden of proving
that an exclusion applies." Ment Bros. Iron Works Co. v.
Interstate Fire & Cas. Co., 702 F.3d 118, 121 (2d Cir. 2012)
(citing Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d
208, 218, 774 N.E.2d 687 (2002)). After that, the burden shifts
to the nonmoving party, who must set forth specific facts showing
a genuine issue for trial. Id. at 121 ("Once the insurer
establishes that an exclusion applies, however, New York law has
evolved to place the burden of proof on the insured to establish
the applicability of an exception to the exclusion.").

**5.    Timeliness of Disclaimers of Coverage**

Under New York Insurance Law § 3420(d), if, with respect to
a liability policy issued or delivered in New York,

> an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2) (McKinney 2013).  Failure to give timely notice of disclaimer "precludes effective disclaimer or denial." Hartford Ins. Co. v. County Of Nassau, 46 N.Y.2d 1028, 1029, 389 N.E.2d 1061 *(*1979).

The obligation to give notice of disclaimer of liability "as soon as is reasonably possible" "is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." First Fin. Ins. Co. v. Jetco Contracting Corp.*,* 1 N.Y.3d 64, 68–69, 801 N.E.2d 835 (2003).  When "all relevant facts supporting a disclaimer are immediately apparent upon receipt of notice of accident," the disclaimer must be communicated "rapidly." Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp., 22 N.Y.3d 571, 576, 6 N.E.3d 578 (2014) (brackets and ellipses omitted).  While this inquiry is "necessarily case-specific," id., and therefore frequently reserved for the fact finder, courts can and do decide the issue of timely disclaimer as a matter of law.  See, e.g., U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel, 900 F. Supp. 641, 649 (E.D.N.Y. 1995) (concluding disclaimer timely as a matter of law); U.S. Underwriters Ins. Co. v. Held Bros., Inc., No. 97

Civ. 5407(HB), 1998 WL 355425, at *5 (S.D.N.Y. June 30, 1998) (concluding disclaimer untimely as a matter of law).

**6.   Reimbursement of Defense Costs**

"New York law permits insurers to provide their insureds with a defense subject to 'a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage.'" Maxum Indem. Co. v. A One Testing Labs., Inc., No. 14-CV-4023(KBF), --- F.Supp.3d ---, 2015 WL 8492756, at *4 (S.D.N.Y. Dec. 10, 2015) (quoting Law Offices of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc., 128 A.D.3d 556, 9 N.Y.S.3d 264, 267–68 (2015)).   In order to be entitled to reimbursement of defense costs, the insurer must explicitly advise the named insured that it was reserving its right to seek reimbursement against the named insured in the event it is determined the insurer had no defense obligation, and the insured must not object to the reservation.   Id.; Max Specialty Ins. Co. v. WSG Investors, LLC, No. 09-CV-5237(CBA)(JMA), 2012 WL 3150579, at *8 (E.D.N.Y. April 20, 2012); Axis Reinsurance Co. v. Bennett, No. 07 Civ. 7924(GEL), 2008 WL 2600034, at *2 (S.D.N.Y. June 27, 2008); Gotham Ins. Co. v. GLNX, Inc., No. 92 Civ. 6415(TPG), 1993 WL 312243, at *4 (S.D.N.Y. Aug. 6, 1993); Dupree v. Scottsdale Ins. Co., 96 A.D.3d 546, 947 N.Y.S.2d 428, 429 (1st Dep't 2012).

**B.   Analysis**

**1.   The Independent Contractor Exclusion is Unambiguous**

The Independent Contractor Exclusion excludes coverage of "'bodily injury' to" "[a]ny independent contractor or the 'employee' of any independent contractor while . . . working on behalf of any insured." This provision is unambiguous. If an independent contractor or its employee were injured in the course of working for Franchise, that injury would not be covered by the Century Policy. The defendants have not proposed, and the Court cannot conceive of, another reasonable interpretation of this provision in the context of this case. See U.S. Underwriters Ins. Co. v. Landau, 679 F. Supp. 2d 330, 339 (E.D.N.Y. 2010) ("Contrary to defendants' contention, and as several courts have found, the independent contractor exclusion in the USU policy is unambiguous."); U.S. Underwriters Ins. Co. v. Zeugma Corp., No. 97 CIV. 8031(SS), 1998 WL 633679, at *3 (S.D.N.Y. Sept. 15, 1998) ("[T]he language of the exclusion at issue here -- excluding coverage for property damage 'arising out of operations performed for any insured by independent contractors' -- has consistently been found by courts to be 'clear and unambiguous.'"); B'Nai Israel, 900 F. Supp. at 645; Mount Vernon Fire Ins. Co. v. Future Tech Constr. Corp., No. 94 Civ. 1362(SHS), 1997 WL 419997, at *2 (S.D.N.Y. July 28, 1997)); Mount Vernon Fire Ins. Co. v. William Monier Constr. Co., No. 95 CIV. 0645(DC), 1996 WL 447747, at *3-4

(S.D.N.Y. Aug 7, 1996), aff'd, 112 F.3d 504 (2d Cir. 1997); U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVI, No. 99-CV-7398DGT, 2004 WL 2191051, at *5 (E.D.N.Y. Sept. 30, 2004) (collecting cases and concluding that "[c]ourts in this circuit have interpreted language of similar . . . 'independent contractor' exclusions to be 'clear and unambiguous'").

Franchise suggests the Independent Contractor Exclusion is ambiguous because the term "independent contractor" is not defined by the Century Policy.  Franchise Mem. 7.  However, "the mere fact that a contractual term is undefined does not render it ambiguous per se."  Cassoli v. Am. Med. & Life Ins. Co., No. 14-Cv-9379(SHS), 2015 WL 3490688, at *3 (S.D.N.Y. June 2, 2015) (applying New York law).  Instead, "even where a contract does not define a particular -- and potentially ambiguous -- term, a body of state law or an established custom [may fill] in the gaps left by the drafters." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 617 (2d Cir. 2001).  In cases construing independent contractor exclusions under New York law, courts have used the following definition as the plain meaning of "independent contractor":

> one who contracts to do certain work according to his own methods, and without being subject to the control of his employer except as to the product or result of his work; he contracts to perform a piece of work at his own risk and cost, his workmen being his servants and he being liable for their misconduct.

G.D. Searle & Co. v. Medicore Commc'ns, 843 F. Supp. 895, 904–05 (S.D.N.Y. 1993).  See Future Tech Constr. Corp., 1997 WL 419997, at *2 (citing G.D. Searle); William Monier Constr. Co., 1996 WL 447747, at *3-4 (same); Mount Vernon Fire Ins. Co. v. Chios Constr. Corp, No. 94 Civ. 6107(SS), 1996 WL 15668, at *3 (same); Congregation Kollel Tisereth, 2004 WL 2191051, at *7 ("Although 'independent contractor' is not defined by the policy, courts relying on the ordinary meaning of the term have defined it as: 'one who contracts to do certain work according to his own methods, and without being subject to the control of his employer except as to the product or result of his work.'" (citing G.D. Searle)).  It is also instructive that in their legal memoranda, all four moving parties employ definitions of "independent contractor" that are substantially the same,[5] and the meaning of the term is never disputed.  Therefore, because there is no objectively reasonable alternative meaning of the term "independent contractor," the

---

[5]   For example, Century uses the definition from G.D. Searle, Century Reply 8, and Franchise cites to the following definition from Beach v. Velzy, 238 N.Y. 100, 103, 143 N.E. 805 (1924):

> The independent contractor is one who agrees to do a specific piece of work for another for a lump sum or its equivalent who has control of himself and his helpers, as to when, within a reasonable time, he shall begin and finish the work; as to the method, means or procedure of accomplishing it; and who is not subject to discharge because he does the work as to method and detail in one way rather than another.

Franchise Mem. 5; see also 3795 Mem. 16; WFG Mem. 3.

Court concludes the Independent Contractor Exclusion is not ambiguous on this basis.

The Court also rejects Franchise's and 3795's contention that the Independent Contractor Exclusion is ambiguous because it fails to define the word "subcontractor"[6] or distinguish between "subcontractors" and "independent contractors." 3795 relies on Century Sur. Ins. Co. v. All in One Roofing, LLC, 40 Misc. 3d 1205(A), 975 N.Y.S.2d 365, 2013 WL 3388630 (Sup. Ct. 2013), a state trial court decision concluding that the independent contractor exclusion in a different Century-issued policy was ambiguous. However, All in One Roofing is both nonbinding and inapposite. The exclusion in All in One Roofing excluded "bodily injury" to "[a]ny independent contractor or the 'employee' of any independent contractor" -- as does the Independent Contractor Exclusion here -- but it additionally provided that: "[t]his exclusion does not apply if the work was performed on your behalf by a subcontractor, pursuant to a written contract" if that subcontractor held a valid insurance policy meeting certain conditions, including that the general contractor was named as an additional insured. Id. at *1-2. The All in One Roofing court found the exclusion ambiguous

---

[6]    We note that once again, the parties all employ the same definition of a "subcontractor" as "one who agrees to perform some portion of a contract," Century Reply 5; Franchise Mem. 5, evincing a plain and ordinary -- and undisputed -- meaning of the term. See Congregation Kollel Tisereth, 2004 WL 2191051, at *7 (using an almost identical definition as the ordinary meaning of "subcontractor").

because it "used the words 'subcontractors' and 'independent contractors' interchangeably . . . [and] did not define either independent contractor or subcontractor in its policy." Id. at *4. Because the Independent Contractor Exclusion at issue in this case has no such clause exempting certain "subcontractors," and indeed does not even mention the word "subcontractor," it cannot produce the same ambiguity.[7]

Moreover, even after finding the independent contractor exclusion to be ambiguous and construing it in favor of the insured, the All in One Roofing court ultimately concluded its task was to determine whether or not the injured party was an "employee of an independent contractor" and therefore excluded from coverage. Id. at *5. This is also the operative question in this case: was Pearl, the employer of Richardson, an independent

---

[7]   Similarly, the Court rejects 3795's suggestion that the ambiguity found in All in One Roofing's independent contractor exclusion "establishes that Century holds two separate meaning[s] for the terms independent contractor and subcontractor within policies Century made available in 2010/2011," and therefore proves that the Independent Contractor Exclusion in this case is ambiguous. 3795 Reply 6. First, the definitions Century may "hold" for certain terms is irrelevant to the meaning of an objectively unambiguous contract, and 3795's effort to use a provision from a prior Century policy to show an ambiguity in this Century Policy conflicts with basic contract law. See Schron v. Troutman Sanders LLP, 20 N.Y.3d 430, 436, 986 N.E.2d 430 (2013) ("Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract.  As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement."). Second, if anything, the absence of the ambiguity-producing language present in the All in One Roofing case indicates an intention to avoid that ambiguity, not to reincorporate the problematic language.  Finally, 3795's claim that Century itself "holds" mutually exclusive definitions for the terms "subcontractor" and "independent contractor" is belied by Century's consistent position, in the All in One Roofing case and in this case, that "independent contractor" is a generic term encompassing the term "subcontractor."  See 2013 WL 3388630, at *4.

contractor?   In this sense, the presence or absence of the word "subcontractor" in the Century Policy, and any alleged ambiguity produced as a result, is beside the point.   Instead, defendants' insistence that "subcontractor" and "independent contractor" are distinct categories is best viewed as an argument that Pearl was not in fact an independent contractor.   We turn to this issue next.

### 2.   Pearl was an Independent Contractor

Century maintains that the application of the Independent Contractor Exclusion to this case is straightforward.   Pearl was Franchise's independent contractor.   Richardson, an employee of Pearl, was the "employee of an independent contractor."   Therefore, his alleged injury is excluded by the Independent Contractor Exclusion.   This logic is sufficient for Century to establish prima facie entitlement to summary judgment.

In opposition, defendants claim Pearl was a "subcontractor and not an independent contractor" because the parties referred to Pearl as a subcontractor and because Franchise controlled Pearl's work.   As a result, defendants conclude, Richardson was the "employee of a subcontractor," which they say is distinct from the "employee of an independent contractor" and therefore outside the scope of the Independent Contractor Exclusion.   For the reasons set out below, however, we conclude that Century's position is consistent with the law and the facts.

First, to the extent defendants suggest that "subcontractor" and "independent contractor" are mutually exclusive concepts, they are incorrect.  See Johnson v. Briggs, 34 A.D.2d 1068, 1068-69, 312 N.Y.S.2d 637 (3d Dep't 1970) ("The argument implicit in respondent's contention . . . is that 'independent contractor' and 'subcontractor' are exclusive categories.  The contrary is settled law.").  We can discern no reason why a subcontractor (defined by Franchise as "one who agrees to perform some portion of a contract," Franchise Mem. 5) cannot also be an independent contractor (defined by Franchise as "one who agrees to do specific piece of work for another for a lump sum" while retaining control over the method and means of its work, id.).  Moreover, the terms "contractor" and "independent contractor" are broad terms that can include "subcontractors" and "general contractors."  See Congregation Kollel Tisereth, 2004 WL 2191051, at *7 (applying an independent contractor exclusion and explaining that "the term 'contractor' has been held to be a 'generic one, encompassing both general contractors and subcontractors.'"); Chios Constr. Corp., 1996 WL 15668, at *2 (rejecting the argument that a subcontractor "might not qualify as an independent contractor because the policy did not specify that subcontractors were always to be considered independent contractors").  Thus, the fact that the parties understood Pearl to be a "subcontractor" in no way proves it was

not an independent contractor, since the term "independent contractor" clearly can include a "subcontractor."

In fact, the relevant case law in the construction context demonstrates that general contractors and subcontractors in a construction project usually act as independent contractors.  The function of a general contractor is not to manage or control the day-to-day work of its subcontractors but to supervise and coordinate the overall project.  As a result, the general contractor-subcontractor relationship is generally one in which each party controls the details of its own work.

> As a practical matter, general contractors in the
> construction industry do not hire or supervise the
> workers employed by their subcontractors; they do not
> usually maintain the employment records for each worker
> or track the individual workers' schedules or rates of
> pay.  The primary objective of a general contractor is
> to keep the project on schedule and to coordinate the
> work among subcontractors in order to avoid costly
> delays in the completion of the project.

Ovadia v. Office of Indus. Bd. of Appeals, 19 N.Y.3d 138, 143, 969 N.E.2d 202 (2012).  Reflecting this practical reality, courts have consistently treated subcontractors as independent contractors for the purposes of an independent contractor exclusion, and the defendants cite no authority to the contrary.  See Landau, 679 F. Supp. 2d at 339; Held Bros., 1998 WL 355425, at *2 ("The Policy excludes coverage for injuries 'arising out of' operations performed for Held Brothers by an independent contractor. It is undisputed that Held Brothers subcontracted all of the job of

removing and installing the tile in the hallways at 550 Grand Street to Batu Gajah . . . . Since Marshall was allegedly injured due to operations performed by Batu Gajah, her alleged injuries clearly arose out of operations performed by an independent contractor."); Mount Vernon Fire Ins. Co. v. Roma Constr. Corp., 952 F. Supp. 129, 131 (E.D.N.Y. 1996) ("These uncontroverted statements of Roma's president, in conjunction with the Policy and the roofing subcontract, leave no ambiguity that South Marlboro was an independent contractor of Roma, and that the Policy does not cover injuries to employees of such an independent contractor."); Chios Constr. Corp., 1996 WL 15668, at *3; Congregation Kollel Tisereth, 2004 WL 2191051, at *7 ("[I]t is apparent that [the general contractor] Empire Concrete was an independent contractor retained by the Congregation to perform work on the subject premises, and that Empire subcontracted the work to Acosta, who, in turn, employed Meneses. . . . The fact that Acosta and Meneses were subcontractors of Empire does not preclude the application of the exclusion."). That subcontractors are generally independent contractors is reflected in New York construction law as well. See 33 N.Y. Prac., New York Construction Law Manual Appendix 10A (2d ed.) (defining a commercial general liability policy as one that "protects the contractor against third-party bodily injury and property damage liability claims arising from," among other things, "the actions of the contractor's

independent    contractors    (e.g.,    subcontractors    and    sub-
subcontractors)").

Second, defendants posit the existence of a "subcontractor"
that is neither an independent contractor nor an employee, but
rather a new category based on the general contractor's control
over the subcontractor's work.   While advancing this theory,
defendants simultaneously concede Pearl and Richardson were not
Franchise employees but insist that Franchise controlled Pearl's
work to such an extent that Pearl was not an independent
contractor.

This theory has no basis in law.  Defendants do not cite, and
the  Court  has  not  found,  any  authority  distinguishing,
"subcontractor" from "independent contractor" or "employee" on
this basis.   It is instructive, for example, that the cases
defendants rely on to define an independent contractor by its
control over the means and methods of its work are in fact
distinguishing between independent contractors and employees.  See
Beach, 238 N.Y. at 103; Favale v. M.C.P. Inc., 125 A.D.2d 536,
536, 509 N.Y.S.2d 425 (2d Dep't 1986); Felice v. St. Agnes Hosp.,
65 A.D.2d 388, 396, 411 N.Y.S.2d 901 (2d Dep't 1978).  Under these
cases, even if defendants could show that Franchise directed and
controlled the means, method, and manner of Pearl's day-to-day
work, that would demonstrate Pearl and Richardson to be Franchise's
employees, a result defendants deny and would anyway result in

exclusion of Richardson's injury through another provision in the

Century Policy.[8]  Ultimately, defendants offer no support for their

theory   that   eschews   the   traditional   employee-independent

contractor dichotomy.[9]  See Monier Constr. Co., 1996 WL 447747, at

*4 ("[D]espite [defendants'] creative efforts, there are only two

possibilities:   [the   injured   worker]   was   either   an   independent

contractor or employee."); Colon v. U.S. Liability Ins. Group, No.

06-CV-5422(SLT)(VVP), 2009 WL 2413646, at *3 (E.D.N.Y Aug. 6, 2009)

(reasoning injured worker "was either an employee of the insured

or   an   employee   of   an   independent   contractor   retained   by   the

insured").

---

[8]      An "Employee Exclusion" provision in the Century Policy, numbered CGL
1702 11/00, excludes coverage for "'[b]odily injury' to . . . [a]n 'employee'
of the named insured arising out of and in the course of" his or her employment.
Post Aff. Ex. I.   The meaning and validity of the Employee Exclusion is
undisputed.

[9]      In All in One Roofing, the state trial court concluded there was a question
of fact as to whether a sub-subcontractor was an independent contractor for the
purposes of an independent contractor exclusion and therefore denied Century's
motion for summary judgment.   2013 WL 3388630, at *5.   Defendants report that
this question was ultimately submitted to a jury.   WFG Reply 2.   All in One
Roofing thus implies that a subcontractor is not necessarily also an independent
contractor, and we do not disagree.   See Avondale Indus., Inc. v. Int'l Marine
Carriers, Inc., 15 F.3d 489, 494 (5th Cir. 1994) ("A subcontractor may or may
not have an agency relationship with the contractor and that relationship does
not control whether or not a subcontract has been struck.").   However, All in
One Roofing gives no support to defendants' suggestion that a subcontractor can
be neither an independent contractor nor an employee.

       In any event, the facts of All in One Roofing are inapposite. In that
case, the only evidence presented by Century to show the sub-subcontractor in
question was an independent contractor was testimony that the work was
"subcontracted" to that him: no evidence was addressed to the facts and
circumstances of the subcontractor's work.   Id. at *5.   As discussed below, the
well-developed facts in this case support our conclusion that there is no
genuine issue of fact that Franchise did not control the means and methods of
Pearl's day-to-day work.

Third, the record in this case, which includes discovery obtained in the underlying state court action, belies defendants' claims that Franchise directed and controlled the means and methods of work performed by Pearl's employees.   The following is undisputed:  Pearl is a separate company from Franchise and contracted with Franchise to perform certain work for a fixed sum;[10] Pearl and its workers provided all the materials and tools used, including the scaffold involved in the accident;[11] Pearl's sole principal hired and trained Richardson and transported him to and from the work site, including on the day of the accident;[12] Pearl's principal instructed the workers where to set up to work each day, including on the day of the accident;[13] Pearl's principal did the timekeeping for his employees' hours;[14] Pearl was responsible for its employees' compliance with safety rules;[15]

---

[10]    See Ritzert Aff. Ex. O, at 1-2 ("Scope of Work Agreement").

[11]    See id. at 1 ("Pearl Drywall Finishing, Inc. (PDFI) will supply and load all materials onto jobsite."); Rider C to Scope of Work Agreement ¶ 12 ("This Subcontractor is to include all costs for providing, erecting and dismantling scaffolding for installation of their work."); Ritzert Aff. Ex. F ("Lombardi Sr. Tr.") 33:13-34:14; Ritzert Aff. Ex. J Dep. Tr. ("Indiviglio Tr.") 49:14-17; Kohane Aff. Ex. L Dep. Tr. ("Richardson Tr.") 13:3-13, 66:3-7, 92:4-6.

[12]    See Indiviglio Tr. 15:24-16:3, 49:11-13; Richardson Tr. 14:21-15:6.

[13]    See Indiviglio Tr. 52:11-19, 57:16-58:10, Richardson Tr. 91:18-23. Pearl's principal also assigned Richardson to be "in charge," or foreman, at the job site on the day of the accident.  Indiviglio Tr. 83:11-20.

[14]    See Richardson Tr. 17:10-12.

[15]    See Rider C to Scope of Work Agreement ¶ 7 ("Subcontractor shall meet the requirements of O.S.H.A. rules and regulations. . . . Failure to comply will result in automatic fine to Subcontractor."); Indiviglio Tr. 86:2.

Pearl was responsible for providing workers' compensation insurance for its workers;[16] Pearl's principal prepared the workers' compensation paperwork following Richardson's injury;[17] Richardson was paid from Pearl's workers' compensation policy;[18] and Pearl's principal assigned its employees' day-to-day work.[19] Most importantly, it is undisputed that no one but Pearl's principal gave Richardson or other Pearl employees specific instructions about where or how to work on any day, including the day of the accident,[20] or gave direction as to how to set up the bakers rack before the accident.[21]   These facts clearly indicate

---

[16]    Scope of Work Agreement 1 ("Our Workers are fully covered by Workmen's Compensation Insurance."); Rider F to Scope of Work Agreement (requiring subcontractor to carry Workers' Compensation Insurance "[i]n the statutory amounts").

[17]    See Indiviglio Tr. 104:9-12.

[18]    See Indiviglio Tr. 92:19-93:2.

[19]    See Richardson Tr. 58:16-59:4; Indiviglio Tr. 62:18-21.

[20]    See Richardson Tr. 91:18-92:3 ("Q. At the job site you are at, the location, facility at 3795 Crompond Avenue. Did you receive any instructions from anybody other than Mike [Pearl's principal] about the work that you were to perform? A. No.  Q. Did you receive any instruction from anybody other than Mike, as to how you were supposed to do the work?  A. No.).  Another Pearl employee and eyewitness to the accident, Rigoberto Martinez, testified as follows in his state court deposition: "Q. On the day of the accident or any other time before the accident, when you were working at this job site, did you receive any instructions from anyone else, other than Mr. Indiviglio [Pearl's principal]?  A. No."  Ritzert Aff. Ex. H Dep. Tr. ("Martinez Tr") 49:14-18. See also Martinez Tr. 9:2-16, 9:24-10:4, 21:15-23:11, 29:19-30:4.  Finally, in his state court deposition Franchise's supervisor on the site testified as follows: "Q. Did you ever have a discussion with Mike [Pearl's principal] regarding any intricacies or any specifics that needed to be done with regard to taping?  A. No."  Lombardi Sr. Tr. 37:15-18.

[21]    See Martinez Tr. 15:14-25, 28:4-6.

Pearl was an independent contractor with control over the methods and means its employees used to perform their work.

Defendants' arguments to the contrary are unavailing.  As a preliminary matter, their conclusory claims that Franchise "retained control over the entirety of the project, including controlling the work . . . the method of accomplishing the work, and the quality of the laborers' workmanship," Franchise Mem. 5-6, are insufficient to raise a triable issue of fact.  See Fed R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . .").

Apart from their inadequate conclusory claims, defendants point to the following facts in the record, which we presume to be true in evaluating Century's motion for summary judgment: the frequent presence of Franchise's principals on the site;[22] the fact that Pearl's principal informed Franchise's principals of its progress "all the time";[23] an episode in which, because of delays on other parts the project, Pearl was "held up" had to "pull off the job for a week and then go back again";[24] the presence of

---

[22]     Mr. Lombardi, Sr., testified that the younger Mr. Lombardi, Jr. (his son) and Fiorino, the owners of Franchise, were on the site "once or twice a week, maybe."  Lombardi Sr. Tr. 42:21.  Pearl's principal testified that Lombardi Jr. and Fiorino were on the job site "almost every day."  Indiviglio Tr. 131:4-18.

[23]     See Indiviglio Tr. 131:1-13.

[24]     See Indiviglio Tr. 131:14-132:22.

Franchise's superintendent at the work site, who would inspect work daily and complain when Pearl's work was not up to his standards;[25] that Franchise's superintendent conducted weekly safety meetings at the site, attended by "all workers";[26] the fact that, under the "Scope of Work" section of the Scope of Work Agreement, "[a]ll walls will be sheet rocked not according to plans but according to Frank Lombardi and John Fiorino," the principals of Franchise, in that Franchise had asked Pearl to construct sheet rock to a height that differed from existing construction plans.[27]

---

[25]    Defendants cite portions of the following exchange:

Q. Did you ever have a discussion with Mike regarding any intricacies or any specifics that needed to be done with regard to taping?
A. No.
Q. As Pearl performed its job, would you inspect the job that it had done?
A. Yes.
Q. How often did you inspect Pearl's work?
A. As we went along.
Q. Would that be daily?
A. Yes.
. . . .
Q. As you inspect Pearl's work daily after it was done each day, if you found something that wasn't up to your standards, would you advise somebody at Pearl to fix it?
A. Yes.
Q. Did that ever happen?
A. No.

Lombardi Sr. Tr. 36:19–38:12.

[26]    See Lombardi Tr. 55:6–11.

[27]    See Indiviglio Tr. 129:9–131:3.  Indiviglio quoted a price for 10- and 12-foot-high walls based on information about the job that he received from Franchise.  However, he later saw that the construction plans, in contrast to Franchise's description of the job, called for sheet rock up to heights of 18 and 20 feet.  He therefore added this provision to the Scope of Work Agreement to cover the anticipated divergence from the plans.  Id.  Viewed in context, it is clear this provision in no way cedes control over the means and methods of Pearl's employees' work from Pearl to Lombardi and Fiorino.

Neither individually nor in combination do these facts raise a material issue as to whether Franchise directed and controlled the means, methods, and manner of Pearl's work. A general contractor will, of course, have some supervisory authority over the subcontractor, but that is not sufficient to vitiate a subcontractor's status as an independent contractor. See N.L.R.B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 689 (1951) ("[T]he fact that the contractor and subcontractor were engaged on the same construction project, and that the contractor had some supervision over the subcontractor's work, did not eliminate the status of each as an independent contractor."); Broderick v. Cauldwell-Wingate Co., 301 N.Y. 182, 187, 93 N.E.2d 629 (1950) ("[T]he mere retention of the power of general supervision to see that the over-all work proceeds properly and to co-ordinate the actions of several subcontractors on the site will not ordinarily cast him in damages for the negligence of any of the latter."); Dennis v. City of New York, 304 A.D.2d 611, 612, 758 N.Y.S.2d 661 (2d Dep't 2003) ("The retention of the right to generally supervise the work, to stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations, does not amount to the supervision and control of the work site necessary to impose liability on an owner or general contractor pursuant to Labor Law § 200."); Ovadia, 19 N.Y.3d at 143 ("[G]eneral contractors frequently interact with the principals and

supervisors of the subcontractors and generally have no direct control or functional supervision over the employees performing work for the subcontractors."). See also Metro. Heat & Power Co. v. AIG Claims Servs., Inc., 47 A.D.3d 621, 622, 850 N.Y.S.2d 142 (2d Dep't 2008) ("Easco was clearly an independent contractor. It performed the work according to its own methods without being subject to the plaintiff's control, except as to the product or result of its work.").

The facts here do not lead to a different result.  At most, Franchise supervised Pearl's progress and coordinated work among the subcontractors, but it never intervened into how Pearl employees such as Richardson actually completed the work.[28]  Based on the record, Pearl performed the work according to its own methods without being subject to Franchise's control, except as to the product or result of its work.  No genuine issue of fact has been raised as to Pearl's status as an independent contractor.

### 3.    The Century Policy's Exclusions Do Not Render its Coverage "Illusory"

Franchise and 3795 argue that if the Century Policy does indeed exclude coverage of Richardson's state court action, then it provides impermissible "illusory" coverage.  The Court rejects this argument.  Neither Franchise nor 3795 advances any specific

---

[28]    For example, Franchise's site superintendent who inspected Pearl's work did not know the name of any of Pearl's employees or recall having any specific interactions with any Pearl employee other than saying "good morning" and "hello."  See Lombardi Sr. Tr. 28:7–30:9.

reason as to why the Century Policy is procedurally or substantively unconscionable.[29]   Nor do they propose that the policy violates any requirement for statutorily mandated insurance coverage, which forms the outer bounds of what an insurance policy may exclude.   See Slayko v. Sec. Mut. Ins. Co., 98 N.Y.2d 289, 295-96, 774 N.E.2d 208 (2002).   Instead, their argument seems to be that it is fundamentally unfair for an insurance policy purportedly covering a construction project not to cover bodily injury to any of the laborers on the site, be they employees or independent contractors.   This, defendants say, is precisely the coverage that Franchise sought.

None of the defendants presents any evidence that Franchise "sought" coverage for individuals such as Richardson and was somehow fooled by Century.   Even presuming Franchise sought such coverage, that an insurance policy frustrates the expectations of the insured party is not a reason to invalidate it, particularly when courts have regularly upheld such provisions.[30]   See id. at 296 (declining to adopt a "'reasonable expectations' doctrine to mitigate the rigors of policy exclusions when such exclusions operate in surprising and unfair ways").

---

[29]   See Landau, 679 F. Supp. 2d at 340-41 (rejecting certain unconscionability arguments leveled against an independent contractor exclusion).

[30]   In fact, the same allegedly illusory combination of an independent contractor exclusion and an employee exclusion appears in 3795's policy issued by Tudor.   See Riztert Aff. Ex. R.   Instead of rejecting the Tudor policy, 3795 urges us elsewhere in their brief to enforce it.   3795 Mem. 20.

Moreover, the structure of the construction project <u>did</u> provide for insurance to laborers injured on the job.  A rider to the Franchise-Pearl Scope of Work Agreement required the <u>subcontractor</u> (Pearl) to carry: (1) comprehensive general liability coverage with a minimum face policy amount of $5,000,000; (2) workers' compensation in the statutory amount; and (3) disability benefits insurance in the statutory amount.  Kohane Aff. Ex. K, at 10.  The subcontract further required that Pearl name Franchise and WFG "as additional insured on a primary noncontributory basis with the right to receive all monies, all notices and benefits."  <u>Id.</u>  This arrangement sensibly allows a general contractor to avoid the burden of separately insuring each of its subcontractors as it engages them.  Whether Pearl ever procured the required insurance is not part of the record in this case.[31]

### 4.  The Disclaimer of Coverage was Timely and Therefore was not Waived

3795 has argued that it did not receive timely notice of Century's disclaimer of coverage for Richardson lawsuit, and that therefore Century waived disclaimer under New York Insurance Law § 3420(d).  Specifically, 3795 claims Century did not disclaim

---

[31]   <u>See Qulliams v. Half Hollow Hills Sch. Dist.</u>, 67 A.D.3d 763, 765, 892 N.Y.S.2d 397 (2d Dep't 2009) (holding general contractor and owner entitled to contractual indemnification by subcontractor, given subcontractor's breach of contractual requirement to procure primary liability insurance).

coverage until its letter of March 1, 2012, but was on notice of the claim as early as January 18, 2012.  3795 Mem. 22.

The Court need not decide whether the coverage was timely claimed, because it has concluded coverage does not exist.  See Netherlands Ins. Co. v. U.S. Underwriters Ins. Co., No. 14 CIV 3568(NSR)(JCM), 2015 WL 9295745, at *6 (S.D.N.Y. Dec. 17, 2015) ("The doctrine of waiver . . . is inapplicable where an insured's claim is outside the scope of coverage."); Gallien v. Conn. Gen. Life Ins. Co., 49 F.3d 878, 885 (2d Cir. 1995) ("Because waiver is a voluntary and intentional relinquishment of a known right, the court reasoned, there can be no waiver of a right to deny coverage unless underlying coverage exists." (internal quotation marks omitted)).

We note, however, that 3795's argument is based on a mistaken premise.  Century's first disclaimer letter was sent on January 17, 2012, thirty days after Franchise's insurance agent first reported the claim.  This is not only well earlier than March 1, 2012 (the date 3795 claims it first received notice), but also one day earlier than when 3795 alleges Century itself was first on notice of the claim.[32]

---

[32]    If 3795's point is that January 17 letter to Franchise was not also sent to 3795, this suggestion is equally deficient.  First, 3795 and Franchise are owned by the same two people.  Second, no claim was made specifically on behalf of 3795 until July 1, 2013, when its insurance company Tudor sent a demand letter to Century on 3795's behalf.  Century responded promptly on July 11, 2013, disclaiming coverage.

**5.   Century is Entitled to Reimbursement of Defense Costs**

Finally, Century asks for a declaration that it is entitled to recoup from Franchise the costs it has incurred in defending Franchise in the state court action.  Century Mem. 15.  Century advised Franchise in its March 1, 2012 letter that it was providing a defense "under a full reservation of rights" and explicitly reserved the right "to commence an action to recoup any legal fees incurred in the defense."  Kohane Aff. Ex. P, at 9.  Franchise's failure to object at any earlier time precludes their doing so now.  Therefore, we conclude Century is entitled to recoup from Franchise the costs Century has incurred in defending the state court action.  See Maxum Indem., 2015 WL 8492756, at *6.

## IV.   CONCLUSION

For the foregoing reasons, Century's motion for summary judgment is granted, and defendants' cross-motions for summary judgment are denied.  We declare that:

(1) Century is not obligated to defend or indemnify Franchise, 3795, or WFG in the underlying state court action; and

(2) Century is entitled to recoup the defense costs it has incurred in defending the state court action.

The Clerk of the Court is directed to enter judgment for Century accordingly, to terminate the motions pending at docket numbers 49, 66, 80, and 85, and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           March *10*, 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

35